# Commercial Mutual Accident Co. v. Mary Hall Bates.

1. PLEADING—*What a Demurrer Admits.*—It is an elementary rule of pleading that a demurrer admits only such facts as are well pleaded, but it does not admit the conclusions of the pleader drawn from the facts stated in the pleading.

2. SAME—*To be Construed Against the Pleader—Conclusions, etc.*—A pleading is to be construed most strongly against the pleader, and by the application of the rule that a demurrer does not admit the conclusions of the pleader, if several reasonable conclusions may be drawn from the facts stated, the conclusion most unfavorable to the pleader will generally be accepted.

3. WARRANTY—*Promise to do a Particular Thing in the Future.*—A statement in an application for insurance is held to be a mere promise to do a particular thing in the future, which, if not performed, would subject the promisor to such liability as might follow the breach, but which would not have the effect of rendering the entire contract nugatory, nor be regarded as a warranty of any existing fact.

4. FRAUD—*Is Never Presumed.*—Fraud is never presumed; it must be alleged and proved; it can not be presumed from the conclusions of the pleader.

5. INSURANCE—*Protection from Other Insurance.*—If insurance companies would protect themselves from other insurance they must do so by their contract.

**Assumpsit**, on a certificate of membership in an accident insurance company. Appeal from the Circuit Court of Kane County; the Hon. GEORGE W. BROWN, Judge, presiding. Heard in this court at the December term, 1897. Affirmed. Opinion filed February 28, 1898.

ST. JOHN & MERRIAM, attorneys for appellant.

A warranty is in the nature of a condition precedent; it must appear on the face of the policy, or if on another part of it, or on a paper physically attached, it must appear that the statements were intended to form a part of the policy; or, if on another paper it must be so referred to in the policy as clearly to indicate that the parties intended it to form a part of the policy. Mutual Ben. Life Ins. Co. v. Robertson, 59 Ill. 123; Continental Life Ins. Co. v. Rogers, 119 Ill. 474.

Where the application is expressly declared to be part of the policy, and where the statements are warranted to be

true, they are held material, whether in fact they are so or not, and if shown to be false there can be no recovery on the policy. Thomas v. Fame Ins. Co., 108 Ill. 91; Northwestern Ben. & Mut. Aid Ass'n v. Hall, 118 Ill. 169; McKenzie v. Scottish Union and Nat. Ins. Co., 44 Pac. Rep. (Cal.) 922.

A. J. HOPKINS, F. H. THATCHER and F. A. DOLPH, attorneys for appellee.

Demurrers to all special pleas were properly sustained. Warranties are construed most strongly against those for whose benefit they are made, and so if possible as to avoid a forfeiture. 'World Mutual Life Ins. Co. v. Schultz, 73 Ill. 586; Healey v. Mutual Accident Ass'n, 133 Ill. 556.

Although a policy refers to and makes the application a part of it, yet only statements made strictly in answer to the inquiries contained therein, can be regarded as warranties. Flanders on Fire Ins. (2d Ed.) 236, 237; Wood on Fire Ins., Secs. 144, 160; Howard Fire & Marine Ins. Co. v. Cornick et al., 24 Ill. 455; Hartford Protection Ins. Co. v. Harmer, 2 Ohio St. 461.

All the insured is bound to disclose is what he is interrogated about. Norwich Fire Ins. Co. v. Boomer, 52 Ill. 442.

Representations and promises to do something in the future are never considered fraud; even though they may have influenced the transaction, they are not fraud at law. Gage v. Lewis, 68 Ill. 604; People v. Healy, 128 Ill. 9; Kitson v. Farwell et al., 132 Ill. 327. All ambiguity in a question in an application is resolved in favor of the assured, and it is the duty of an insurance company, if it desires explicit answers, to frame its questions so they can not mislead. Mutual Mill Ins. Co. v. Gordon, 121 Ill. 366.

MR. JUSTICE WRIGHT DELIVERED THE OPINION OF THE COURT.

Appellee sued appellant in assumpsit upon a certificate of membership, for $5,000, containing the contract of the parties for accident insurance, issued to Erasmus W. Hall, dated July 16, 1896, upon which, in case of death of said Hall, caused solely by external, violent and accidental

means, within the meaning of the certificate, the appellee as beneficiary should be paid by appellant the said sum of money. Hall died August 4, 1896, from the result of injuries, and proofs of his death were submitted to appellant, and it having failed to pay, as provided by the contract, this suit was instituted. A trial by jury resulted in a verdict and judgment for $5,145.83 against appellant, from which it appeals to this court, assigning various errors upon the record, for which it asks a reversal of the judgment.

To the declaration appellant pleaded the general issue and ten special pleas, to all of which latter the court sustained demurrers, this ruling of the court being one of the errors assigned for reversal.

Some of the pleas to which demurrers were sustained, pleaded the warranty of the deceased, consequent, as alleged, from answers to certain questions contained in his application for insurance, and his verbal representations concerning the subject matter of the same answers to the same questions. Other pleas set up the verbal representations of the deceased that he had dropped the Star insurance (hereinafter mentioned), and which, it is averred, was not true, whereby, it is claimed, fraud resulted to appellant. The application for insurance, containing the questions and answers, is by the terms of the certificate made a part of the contract. The questions and answers upon which the defense is chiefly predicated are as follows:

" 13. Have you any other accident insurance? If so, name amount and companies." Answer, " Atlas $5,000, Star $10,000, comb.; will drop Star July 15th, 1896."

It is stated in the pleas that the words, " will drop Star July 15th, 1896," were added to the answer by the deceased because the agent of the appellant informed him the company would decline to issue a policy to him while he had so much other insurance. It is also averred in the pleas that " comb." in the above answer means combination, thereby intended to describe a certain form of policy issued by the Star Accident Company, and in the plea follows the negation of the existence of such form of policy, affirming to the

contrary that the deceased held two policies of $5,000 each in the last mentioned company. It is also denied the insured dropped the $10,000 insurance in the Star July 15, 1896, or any time, whereby the alleged warranty was broken and the policy vitiated. In other pleas it is stated that the appellant issued the policy upon the application as written, placed it in the hands of its agent with the instructions not to deliver it to the insured until the latter had procured the cancellation of the Star policy; that thereupon the insured represented to such agent that the Star insurance had been dropped, and thereupon the agent delivered to him the certificate now in question; that the last representation of the insured was false, the said Star insurance being in full force at the time of his death, whereupon it is insisted the delivery of the policy was obtained by fraud.

The pleas are numerous and quite voluminous, and we have undertaken to state the substance of such portions of them as we deem necessary to a decision of the questions to be discussed.

It is an elementary rule of pleading that the demurrer admits only such facts as are well pleaded, and it is by no means implied, but the contrary is true, that it admits the conclusions of the pleader, drawn from the facts stated. It is also an elementary rule of pleading that the same is most strongly construed against the pleader, and by the application of this rule to the particular facts stated, if several reasonable conclusions may be drawn from the facts contained in a specified pleading, the conclusion most unfavorable to the pleader will generally be accepted.

In the pleas here presented from the facts stated therein it does not follow necessarily that the abbreviation "comb." has the meaning attributed to it by the pleas, the equally rational conclusion being that it was intended to signify that the two $5,000 policies in the Star combined were equal to $10,000. Besides " comb." and " will drop Star July 15th, 1896," not being responsive to the specific question asked, it may be a serious question if they become a part of the contract, and if the latter was so accepted and intended by the

parties to be a part of the contract, it could in no sense be regarded as a warranty of any existing fact, but a mere promise to do a particular thing in the future, which, if unperformed, subjected the promisor to such liability as might follow the breach of any other ordinary promise, but would not have the effect of rendering the entire contract nugatory.

We think the pleas that attempt to show fraud in that the insured had represented he had dropped the Star insurance, when in fact he had not, is a futile effort to evade the familiar rule of the law that a contract can not exist partly in writing and partly in parol. Besides it is difficult to conceive in what way any of the rights of the appellant would be affected in a fraudulent manner by the fact that the insured had or had not dropped the Star insurance. It may be imagined that with an unusually large insurance to indemnify those to whom a person's bounty may be due, he would thereby become careless to danger, or may be *felo de se*, but as a presumption of the law it would hardly be claimed. There is no statement or suggestion in the pleas, that we have discovered, of such facts. It was no concern of appellant, so far as it might operate as a fraud against it, how great the amount of insurance might be, unless its chances of liability would in fact be increased thereby. Appellant had the undoubted right to contract with reference to such matters without giving a reason for it, and could impose the condition of forfeiture, as it saw fit, as a part of its contract, but to set it up as an independent fact, outside of the contract, from which fraud is to be presumed to flow, is, it seems to us, quite a different question. Fraud is never presumed, but must be alleged and proved, and here we think it is not even alleged. It does not follow, from the facts stated in the pleas, that appellant was in fact defrauded. It is true the conclusion of the pleader is otherwise, but that is conclusion only, and as has been seen, if, by the rules stated, a different conclusion is equally, or more, rational, the court will adopt the latter. If insurance companies would protect themselves from other insurance, if such protection is needed, it seems to us a sound public policy would demand they do so by their contracts.

The seventh plea contains a different point from the others, but still that which is claimed a warranty, and an alleged breach thereof, having the effect, it is said, to vitiate the policy. The question and answer in the application are these: "15. Has any accident company ever rejected your certificate or declined to renew the same? A. No." The breach of this alleged warranty is that the application of the insured to the North American Accident Association had been rejected. No argument is necessary to prove that the word "application" is not a synonym of "certificate."

It is further insisted the verdict is not supported by the evidence because it is said there is no sufficient proof of bodily injury, caused solely by external, violent and accidental means. The widow of the deceased was a witness, and while she was not with him at the time he was injured, she testified she found him afterward, at Mercy hospital, Dubuque, Iowa; that his limb had been taken off, and the other terribly bruised and mangled, and was to be amputated next morning; it was amputated next morning, and he survived the operation until between three and four o'clock August 3, 1896, a few hours after the operation. The natural inference from this evidence would, we think, be the fact in question. The affidavit of the deceased, made after his injuries, describing the manner of the accident to him, was introduced in evidence without objection, and clearly proved the deceased, in attempting to enter a railroad train, accidentally slipped, falling under a car, when the engine started in motion and injured him.

No errors of instructions have been argued, except the refusal of the court to instruct the jury to find the issues for the appellant, at its instance. From what we have already said it follows that, in our opinion, the instruction was properly refused.

Finding no errors in the record and proceedings of the Circuit Court, its judgment will be affirmed.